1  VORYS SATER SEYMOUR AND PEASE LLP
   Cory D. Catignani (Bar No. 332551)
2  cdcatignani@vorys.com
   4675 MacArthur Court, Suite 700
3  Newport Beach, CA 92660
   Telephone: (949) 526-7904
4  Facsimile: (949) 526-7904

5  Attorneys for Defendants
   TAILORED SHARED SERVICES, LLC and
6  THE MEN'S WEARHOUSE, LLC

7

8  **UNITED STATES DISTRICT COURT**

9  **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

10

| MELISSA MARSHALL, individually, and on behalf of all other members of the general public similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TAILORED SHARED SERVICES, LLC, a limited liability company, THE MEN'S WEARHOUSE, LLC, a limited liability company, and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.<br><br>**DEFENDANTS TAILORED SHARED SERVICES, LLC'S AND THE MEN'S WEARHOUSE, LLC'S NOTICE OF REMOVAL**<br><br>Action Filed:   March 26, 2024<br>Trial Date:     None Set<br>Removal Date:   April 26, 2024 |
|---|---|

TO THE CLERK OF THE ABOVE-ENTITLED COURT, AND TO MELISSA MARSHALL AND HER ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Defendants Tailored Shared Services, LLC ("TSS") and The Men's Wearhouse, LLC ("TMW") (collectively, "Defendants") hereby remove the above-captioned action from the Superior Court for the State of California, County of Los Angeles, to the United States District Court for the Central District of California, pursuant to 28 U.S.C. §§ 1332(d) and 1446.

As required by 28 U.S.C. § 1446(d), Defendants will file in the Superior Court and serve upon Plaintiff and her counsel of record a Notice to State Court of

Removal of Civil Action to Federal Court (with these removal papers attached).

In support of this Notice of Removal, Defendants state the following:

## PROCEDURAL HISTORY

1. Plaintiff Melissa Marshall ("Plaintiff") filed her Complaint, captioned *Melissa Marshall, individually, and on behalf of all others members of the general public similarly situated v. Tailored Shared Services, LLC, et al.*, Case No. 24STCV07672 in the Superior Court for the State of California for the County of Los Angeles (the "State Court Action") on March 26, 2024. A true and correct copy of the Complaint, including the Proof of Service, is attached as **Exhibit 1** ("Complaint").

2. The Complaint, Summons, Civil Cover Sheet, and, Civil Case Cover Sheet Addendum and Statement of Location were served on Defendants on March 27, 2024. *See* **Exhibit 1.**

3. Defendants also received copies of an April 11, 2024 Minute Order, Certificate of Mailing, a Proof of Service of Summons to TMW, a Proof of Service of Summons to TSS, and an Initial Status Conference Order (Complex Class Actions), that were filed in the State Court Action, *See* **Exhibit 2**.

## STATEMENT OF JURISDICTION

4. This Court has original jurisdiction over this action under the Class Action Fairness Act of 2005 ("CAFA"). *See* 28 U.S.C. § 1332(d). In relevant part, CAFA grants district courts original jurisdiction over civil class actions filed under federal or state law in which any member of a class of 100 or more putative class members is a citizen of a state different from any defendant and the amount in controversy for the putative class members in the aggregate exceeds $5,000,000, exclusive of interest and costs. CAFA authorizes removal of such actions pursuant to 28 U.S.C. § 1446. As set forth below, this case meets all of CAFA's requirements for removal and is timely and properly removed by the filing of this Notice of Removal.

5. The Act applies to actions that were "commenced" on or after February 18, 2005. Because Plaintiff filed the State Court Action on March 26, 2024, it was "commenced" on or after February 18, 2005, and removal is proper under CAFA.

## TIMELINESS OF REMOVAL

6. Pursuant to 28 U.S.C. § 1446(b), Defendants filed this removal within 30 days after receipt of service of the Complaint and Summons (March 27, 2024). *See* **Exhibit 1.**

## VENUE

7. Plaintiff originally filed this action in the Superior Court for the State of California, County of Los Angeles. Venue is thus proper in this district, pursuant to 28 U.S.C. § 1441(a), because it encompasses the county in which this action is pending.

## PROCEDURAL REQUIREMENTS

8. Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings, and orders served upon Defendants are attached to this Notice of Removal.[1] Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served upon counsel for Plaintiff and a copy is being filed with the Clerk of the Superior Court for the State of California, County of Los Angeles.

## DEFENSES

9. The removal of this action to the Central District of California does not waive Defendants' ability to assert any defense to this action.

///

///

---

[1] In conformity with the requirement of 28 U.S.C. § 1446(a), that copies of all process, pleadings and orders served upon Defendants in the State Court Action be included with this notice of removal, the State Court Action case file is attached as Exhibits 1 and 2.

# REMOVAL UNDER THE CLASS ACTION FAIRNESS ACT

## A. Plaintiff's Action is Pled as a Class Action

10. Under CAFA, "'class action' means any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by one or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B).

11. The State Court Action has been styled as a class action, pursuant to California Code of Civil Procedure section 382. *See* Complaint, ¶¶ 2, 25. Cal. Code of Civ. Pro. § 382 authorizes an action to be brought by one or more representative persons as a class action. *See* Cal. Code of Civ. Pro. § 382.

## B. The Proposed Class Contains at Least 100 Members

12. Pursuant to 28 U.S.C. § 1332(d)(5)(B), district courts will have original jurisdiction over a class action case under CAFA if the number of members of the putative plaintiff class is not less than 100.

13. This requirement is met here. Plaintiff's Complaint proposes a class of "[a]ll persons who worked for Defendant in California as a non-exempt employee at any time during the period beginning four years before the filing of the initial complaint in this action and ending when notice to the Class is sent." Complaint at ¶ 27.

14. Plaintiff alleges the putative Class is estimated to be greater than 100 individuals. Complaint, ¶ 30(a).

15. Plaintiff defines the Proposed Class Period as beginning March 26, 2020 (four years prior to the filing of the Complaint).[2] Complaint at ¶ 27. As of April 11,

---

[2] Defendants filed a petition for bankruptcy. Defendants emerged from bankruptcy on December 20, 2020. Any claims prior to December 20, 2020, were discharged through bankruptcy. Thus, Defendants submit that Plaintiff's claims are limited to the period following December 20, 2020. However, determining the amount in controversy is based on the allegations in the Complaint. *See, e.g., Bmo Harris Bank N.A. v. Laddi Truck Lines, Inc.*, Case No. 1:23-cv-00070-ADA-HBK, 2023 U.S. Dist. LEXIS 147394, *6 (E.D. Cal. Aug. 21, 2023) citing *Chaves v. JPMorgan Chase & Co.*, 888 F.3d 413, 414-15 (9th Cir. 2018). Thus, for purposes of this removal only, Defendants based their

2024, there are approximately 3,633 potential Class Members during the Proposed Class Period. *See* Declaration of Cung D. Nguyen ("Nguyen Decl."), attached hereto as **Exhibit 3**, at ¶ 5(a). Thus, the size of the proposed class is sufficient to meet CAFA's requirement for removal to federal court.

**C. There is Diversity Between at Plaintiff and Defendants**

16. CAFA's minimal diversity requirement is satisfied, *inter alia*, when "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. §§ 1332(d)(2)(A); 1453(b). Minimal diversity of citizenship exists here between Plaintiff and Defendants.

17. Allegations of residency in a state court complaint can create a rebuttable presumption of domicile supporting diversity of citizenship. *Lew v. Moss*, 797 F.2d 747, 750-51 (9th Cir. 1986*); see also State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 519-20 (10th Cir. 1994) (allegation by party in state court complaint of residency "created a presumption of continuing residence in [state] and put the burden of coming forward with contrary evidence on the party seeking to prove otherwise"); *Smith v. Simmons*, 2008 U.S. Dist. LEXIS 21162, at *22 (E.D. Cal. 2008) (place of residence provides "prima facie" case of domicile).

18. Plaintiff is a resident of the State of California. Complaint, ¶ 8. Therefore, Plaintiff is a citizen of the State of California.

19. Conversely, Defendants are not citizens of California.

20. For diversity purposes, a corporation is deemed a citizen of its state of incorporation and the state where it has its principal place of business. 28 U.S.C. § 1332(c)(1); *See also Hertz Corp. v. Friend*, 559 U.S. 77, 80 (2010) (A corporation's "principal place of business" is "the place where a corporation's

---

calculations on Plaintiff's Proposed Class Period. Limiting the class period to the period following December 20, 2020 would not preclude removal because, as demonstrated below, the amount in controversy comfortably exceeds the threshold for removal pursuant to CAFA.

officers direct, control, and coordinate the corporation's activities."). A limited liability corporation is deemed to be a citizen of the states of its members. *N. Va. Operating Co., LLC v. Cigna Healthcare of Cal., Inc.*, Case No. CV 16-9082 PA (AFMx), 2016 U.S. Dist. LEXIS 174487, at *4 (C.D. Cal. Dec. 15, 2016).

21. Defendants TSS and TMW are both limited liability companies. *See* Declaration of Jennifer Porter ("Porter Decl."), attached hereto as **Exhibit 4**, at ¶¶ 4, 6. The Men's Wearhouse, LLC is a Texas limited liability company. TMW's sole member is New TMW, LLC, which is a Delaware limited liability company. *Id.* at ¶ 4. New TMW, LLC's sole member is New TMW Midco, LLC, which is a Delaware limited liability company. *Id.* at ¶ 5. New TMW Midco, LLC's sole member is Tailored Brands, Inc. *Id.* Tailored Brands, Inc., is a Delaware corporation with its principal place of business in Houston, Texas. *Id*. TMW is therefore a citizen of Delaware and Texas for purposes of 28 U.S.C. § 1332(c).

22. Tailored Shared Services, LLC is a Delaware limited liability company. TSS's sole member is The Men's Wearhouse, LLC, which, as noted above, is a citizen of Delaware and Texas for purposes of 28 U.S.C. § 1332(c). Porter Decl. at ¶ 6. Therefore, TSS is also a citizen of Delaware and Texas for purposes of 28 U.S.C. § 1332(c).

23. The presence of Doe defendants in this case has no bearing on diversity with respect to removal. *See Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 690-691 (9th Cir. 1998); *see also* 28 U.S.C. § 1441(b) ("[f]or the purposes of removal…the citizenship of defendants sued under fictitious names shall be disregarded").

24. Accordingly, since Plaintiff is a citizen of a different state than TSS and TMW, minimal diversity exists for federal jurisdiction under CAFA. *See* 28 U.S.C. §§ 1332(d)(2)(A).

**D. The Amount in Controversy Exceeds $5,000,000[3]**

25. This Court has jurisdiction under CAFA, which authorizes the removal of class actions in which, among the other factors mentioned above, the amount in controversy for all class members exceeds $5,000,000. *See* 28 U.S.C. § 1332(d).

26. The removal statute requires that a defendant seeking to remove a case to federal court must file a notice "containing a short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a).

27. Plaintiff's Complaint is silent as to the total amount in controversy. However, Plaintiff's failure to specify the total damages or other monetary relief sought does not deprive this Court of jurisdiction. Rather, when the plaintiff fails to plead a specific amount of damages, the defendant seeking removal "must prove by a preponderance of the evidence that the amount in controversy requirement has been met." *See Rodriguez v. AT&T Mobility Servs.*, 728 F.3d 975, 977 (9th Cir. 2013) ("the proper burden of proof imposed upon a defendant to establish the amount in controversy is the preponderance of the evidence standard.").

28. This burden is not onerous and does not obligate a removing defendant to "research, state, and prove the plaintiff's claims for damages." *Korn v. Polo Ralph Lauren Corp.*, 536 F.Supp.2d 1199, 1204-1205 (E.D. Cal. 2008). Rather, "[t]he 'ultimate inquiry' is what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will *actually* owe." *Id.* (citing *Rippee v. Boston Mkt. Corp.*, 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005)). In determining the amount in controversy for CAFA, all potential damages based on the claims in the complaint, as well as attorneys' fees, are included. *See Campbell v.*

---

[3] Defendants provide the following calculations only to demonstrate that the amount in controversy exceeds $5,000,000. Defendants make no admission of liability or damages with respect to any aspect of this case, nor do Defendants waive their right to ultimately contest the proper amount of damages due, if any, should Plaintiff prevail with any of her claims.

*Vitran Express, Inc.*, 471 Fed. App'x 646, 648 (9th Cir. 2012) (in measuring the amount in controversy, a court "must assume that the allegations of the complaint are true and assume that a jury will return a verdict for the plaintiff on all claims made in the complaint.") (quotations and citations omitted).

29. The United States Supreme Court has held that "as specified in §1446(a), a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014). Only if the plaintiff contests or the court questions the allegations of the notice of removal, is supporting evidence required. *See id.* Otherwise, "the defendant's amount-in-controversy allegation should be accepted" just as a plaintiff's amount-in-controversy allegation is accepted when a plaintiff invokes federal court jurisdiction. *Id.* at 87.

30. In establishing the amount in controversy, a removing party is entitled to make reasonable assumptions. *Ibarra v. Manheim Invs., Inc.,* 775 F.3d 1193, 1199 (9th Cir. 2015); *see also Oda v. Gucci Am.*, Inc, No. 2:14-cv-7468-SVW (JPRx) and 2:14-cv-07469-SVW (JPRx), 2015 U.S. Dist. LEXIS 1672, at *10 (C.D. Cal. 2015) ("Where, as here, a plaintiff makes generalized allegations regarding the frequency of violations, a defendant may calculate the amount in controversy based on reasonable assumptions.").

31. Moreover, Congress intended that any uncertainty of the removability of an interstate class action be resolved in favor of federal jurisdiction. *See* Senate Judiciary Committee Report, S. REP. 109-14, at 42 ("if a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000,' the court should err in favor of exercising jurisdiction over the case.").

32. In sum, Defendants deny the validity and merits of Plaintiff's claims, the legal theories upon which they are purportedly based, and the claims for monetary

and other relief that flow from them. Nevertheless, and notwithstanding Plaintiff's failure to allege the total amount of damages claimed, the amount in controversy as alleged by Plaintiff in this case exceeds $5,000,000.

### 1) Failure to Pay for All Hours Worked

33. Plaintiff's first cause of action alleges that "Defendants knowingly failed to pay to Plaintiff and the Class compensation for all hours they worked" in violation of Labor Code §§ 1182.12, 1194, 1194.2, 1197, and 1197.1. Complaint, ¶¶ 34-43.

34. The minimum wage for employees fixed by the commission or by any applicable state or local law, is the minimum wage to be paid to employees, and the payment of a lower wage than the minimum so fixed is unlawful. Cal. Lab. Code § 1197.

35. Labor Code Section 1182.12 establishes minimum wages for all hours worked. The lowest minimum wages established by Section 1182.12 during the Proposed Class Period (January 1, 2020, to December 31, 2020) was $13 per hour. Cal. Lab. Code § 1182.12(b)(1)(D).

36. Any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit. Cal. Lab. Code § 1194(a).

37. In any action under Labor Code Sections 98, 1193.6, 1194, or 1197.1, to recover wages because of the payment of a wage less than the minimum wage fixed by an order of the commission or by statute, an employee is entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon. Cal. Lab. Code § 1194.2(a).

38. Plaintiff pleads that "[t]hroughout the statutory period, Defendants maintained a policy and practice of not paying Plaintiff and the Class for all hours worked,"

    and "systematically failed and refused to pay Plaintiff and the Class all such wages due and failed to pay those wages twice a month." Complaint, ¶¶ 18, 42.

39. As a result of the foregoing, Plaintiff seeks "recovery of all unpaid minimum wages, interest, and reasonable attorneys' fees and costs pursuant to California Labor Code §§ 218.5, 218.6, and 1194(a)." Complaint ¶ 43.

40. Courts have held that an assumption of one hour of unpaid minimum wages per week is reasonable, particularly where, as here, the Complaint alleges a uniform policy or practice. *Soto v. Greif Packaging, LLC,* Case No. SACV 17-2104 JVS(JDEx), 2018 U.S. Dist. LEXIS 38438, *10 (C.D. Cal. Mar. 8, 2018) (accepting as "reasonable and conservative" defendant's assumption of one hour of unpaid wages per employee workweek); *Ray v. Wells Fargo Bank, N.A.*, No. CV 11-01477 AHM JCX, 2011 U.S. Dist. LEXIS 53155 (C.D. Cal. May 9, 2011) (finding defendant's estimated one hour per week per class member conservative and reasonable when plaintiff alleged that he and putative class members "routinely" worked more than eight hours a day and/or forty hours per week); *Cabrera v. S. Valley Almond Co.*, No. 1:21-CV-00748-AWI-JLT, 2021 U.S. Dist. LEXIS 240881, at *24 (E.D. Cal. Dec. 16, 2021) (finding defendant reasonably assumed one hour of unpaid work per week because the complaint alleged that the "violations occurred 'at times' and 'on occasion,'" and were "due to 'policies and/or practices'"); *Rapisura v. BMW of N. Am.*, No. 2:22-cv-00455 WBS AC, 2022 U.S. Dist. LEXIS 88600, at *6 (E.D. Cal. May 17, 2022) (finding the defendant's assumption that all putative class members were not paid minimum wages for two hours per pay period (one hour per workweek) reasonable where the plaintiff made no distinctions between members of the putative class and alleges there were "uniform payroll policies and practices" that led to unpaid minimum wages").

///

///

41. Defendants will conservatively assume one (1) hour of unpaid minimum wages for each pay period worked by the putative Class during the Proposed Class Period.

42. During the Proposed Class Period, the number of pay periods worked by the putative Class was 101,292. *See* Nguyen Decl. at ¶ 5(c).

43. When multiplying the assumed 101,292 hours of unpaid minimum wages by $13.00/hour, the lowest California minimum wage rate during the Proposed Class Period, the total is $1,316,796 (101,292 x $13.00).

44. Notably, the Complaint also seeks liquidated (double) damages, which Defendants have not included in the above calculations.

### 2) Failure to Pay Overtime

45. Plaintiff's second cause of action is for the alleged failure to pay overtime compensation pursuant to California Labor Code Sections 510, 1194, and 1198. Complaint, ¶¶ 44-52.

46. Each non-exempt employee is entitled to be paid one and one–half times her regular rate of pay for time worked in excess of eight (8) hours per workday and/or more than forty (40) hours per workweek. Cal. Lab. Code § 510.

47. Plaintiff pleads that "[a]t all relevant times hereto, Plaintiff and the Class have worked more than eight hours in a workday, as employees of Defendants." Complaint, ¶ 47. Plaintiff further alleges that she "and the Class are regularly required to work overtime hours" and that "Defendants failed to pay Plaintiff and the Class overtime compensation for the hours they have worked in excess of the maximum hours permissible by law…" *Id.* at ¶ 48.

48. For purposes of CAFA removal, courts commonly accept a calculation of one overtime violation per week. *Dinesen v. U.S. Tool Grinding, Inc.*, Case No. 2023 U.S. Dist. LEXIS 201802, *10-11 (C.D. Cal. Nov. 9, 2023); *Kastler v. Oh My Green, Inc.,* 2019 U.S. Dist. LEXIS 185484, at *12 (N.D. Cal. Oct. 25, 2019) (accepting an assumption of "one hour of ... unpaid overtime per week

per class member"); *Chavez v. Pratt (Robert Mann Packaging), LLC*, 2019 U.S. Dist. LEXIS 59399, at *12 (N.D. Cal. Apr. 5, 2019) (accepting an assumption of "30 minutes of unpaid overtime per putative class member per week"); *Trigueros v. Stanford Fed. Credit Union*, 2021 U.S. Dist. LEXIS 120271, at *11-12 (N.D. Cal. June 28, 2021) (accepting a 20% violation rate and assumption a 0.5 multiple for "the difference between the straight-time rate and the overtime rate"); *Ramirez v. Cornerstone Bldg. Brands*, 2022 U.S. Dist. LEXIS 63673, at *11 (E.D. Cal. April 4, 2022) (accepting an assumption of overtime rates of "30 minutes weekly"); *Danielsson v. Blood Ctrs. of the Pac.*, No. 19-cv-04592-JCS, 2019 U.S. Dist. LEXIS 222539, at *21 (N.D. Cal. Dec. 30, 2019) ("Courts in this circuit have held that an hour of unpaid overtime per week is a reasonable estimate when the complaint alleges a pattern and practice of failing to pay overtime wages.") (internal quotations omitted) (citing *Kastler v. Oh My Green, Inc.*, No. 19-cv-02411-HSG, 2019 U.S. Dist. LEXIS 185484, at *12 (N.D. Cal. Oct. 25, 2019) and *Arreola v. Finish Line*, No. 14-CV-03339-LHK, 2014 U.S. Dist. LEXIS 170464, at *7 (N.D. Cal. Dec. 9, 2014)) ("Where, as here, a proposed class includes all employees during the class period, and the plaintiff pleads that an employer has a regular or consistent practice of violating employment laws that harmed each class member, such an allegation supports a defendant's assumptions that every employee experienced at least one violation once per week.")).

49. As set forth above, Plaintiff alleges that Defendants regularly worked overtime and Defendants failed to pay her and the putative Class for those overtime hours. Accordingly, Defendants will conservatively assume 1 hour of unpaid overtime per pay period.

///

///

///

50. The average hourly rate of putative Class members for the Proposed Class Period is $20.33. Nguyen Decl. ¶ 5(b). The average overtime rate for one hour of pay would therefore be $30.50 (1.5 x $20.33). Thus, the amount of unpaid overtime would be $10.17.

51. During the Proposed Class Period, there were 101,292 pay periods at issue. *See* Nguyen Decl. at ¶ 5(c).

52. Multiplying the assumed hours of unpaid overtime by the unpaid overtime rate for the putative class, this cause of action puts **$1,030,139.64** in controversy (101,292 x $10.17).

### 3) Failure to Provide Meal Periods and Permit Rest Breaks

53. In the third and fourth causes of action, Plaintiff alleges that Defendants "wrongfully failed to provide Plaintiff and the Class with legally required meal periods" and "wrongfully failed to authorize and permit Plaintiff and the Class to take timely and duty-free rest periods." Complaint, ¶¶ 20, 21, 53-64. California Labor Code Section 226.7(b) establishes that an employee who does not receive a meal or rest period to which she is entitled shall be paid one hour of pay at her regular rate of compensation as premium pay. *See* Cal. Lab. Code 226.7(b).

54. Plaintiff alleges that "Defendants' *policy and practice* was to not provide meal periods to Plaintiff and the Class in compliance with California law." Complaint, ¶ 20 (emphasis added). Plaintiff further alleges that "Defendants *always* required Plaintiff and the Class to work in excess of four consecutive hours a day without Defendants authorizing and permitting them to take a 10-minute, continuous and uninterrupted, rest period for every four hours of work (or major fraction of four hours), or without compensating Plaintiff and the Class for the rest periods that were not authorized or permitted." *Id.* at ¶ 21 (emphasis added).

///

1  55. Numerous Courts have held that assuming a 100% violation rate is permissible for determining the amount in controversy when a Complaint does not contain more detailed allegations that would suggest such an assumption is incorrect. *See, e.g., Mejia v. DHL Express (USA), Inc*., No. 15-890-GHK (JCx), 2015 U.S. Dist. LEXIS 67212, at *10 (C.D. Cal May 21, 2015) (using a 100% violation rate to calculate the amount in controversy where the plaintiff's complaint "does not contain any allegations that suggest a 100% violation rate is an impermissible assumption."); *Muniz v. Pilot Travel Ctrs.*, No. CIV. S-07-0325 FCD EFB, 2007 U.S. Dist. LEXIS 31515, at *12-*13 (E.D. Cal. April 30, 2007) ("[P]laintiff includes no fact-specific allegations that would result in a … violation rate that is discernibly smaller than 100% . . . . Plaintiff is the master of her claims, and if she wanted to avoid removal, she could have alleged facts specific to her claims which would narrow the scope of the putative class or the damages sought."). This is especially true here since Plaintiff has alleged that it was Defendants' "policy and practice" to not provide complaint meal periods and "always" failed to authorize or permit compliant rest periods to putative Class members. In such situations, courts regularly find that 50% to 100% assumed violation rates are appropriate. *See Giannini v. Nw. Mut. Life Ins. Co.*, No. C 12-77 CW, 2012 U.S. Dist. LEXIS 60143, at *11 (N.D. Cal. Apr. 30, 2012) (allegations of "routine" violations supported assumption of 100% violation rate); *Elizarraz v. United Rentals, Inc.*, No. 2:18-CV-09533-ODW (JC), 2019 U.S. Dist. LEXIS 62065, at *10-11 (C.D. Cal. Apr. 9, 2019) (finding a 50% violation rate (of every day worked) for missed meal periods and a 25% violation rate (of every day worked) for missed rest periods reasonable based on 'pattern and practice' allegations); *see also Long v. Destination Maternity Corp.*, No. 15cv2836-WQH-RBB, 2016 U.S. Dist. LEXIS 54323, at *24 (S.D. Cal. Apr. 21, 2016) (finding a violation rate of once per week for both meal periods and rest periods).

56. Defendants will conservatively assume one meal period violation and one rest period violation per pay period based on Plaintiff's "policy and practice" language.

57. Defendants use the average hourly rate of all putative Class Members to calculate the amount these claims place into controversy. *Sanchez v. Russell Sigler, Inc.*, No. CV 15-01350-AB (PLAx), 2015 U.S. Dist. LEXIS 55667, at *11 (C.D. Cal. April 28, 2015) ("Defendant's use of an average hourly wage was proper for determining the amount in controversy."); *Coleman v. Estes Express Lines*, Inc., 730 F. Supp. 2d 1141, 1150 (C.D. Cal. 2010) ("it is preferable for defendants to calculate the average hourly wage based on the average wage of all class members." (internal citation and quotation marks omitted)).

58. The average hourly rate of putative Class Members for the Proposed Class Period is $20.33. Porter Decl. ¶ 5(c). Employees are paid bi-weekly. *Id.* at ¶ 5(d).

59. As specified above, for purposes of calculating the amount in controversy, Defendants assume one meal period violation and one rest period violation per pay period. Thus, the meal period claim places $2,059,266.36 in controversy ($20.33 x 101,292) and the rest-period claim places another $2,059,266.36 in controversy ($20.33 x 101,292).

60. In total, the third and fourth causes of action place **$4,118,532.72** in controversy.

61. Here, as set forth above, there is "substantial, plausible evidence" that the amount in controversy in Plaintiff's first, second, third, and fourth causes of action in the Complaint alone totals **$6,465,468.36**.

62. As is clear from the above, Defendants used conservative estimates for each of the first, second, third and fourth causes of action. Additionally, Defendants have not included Plaintiff's fifth, sixth, and seventh causes of action, as well

1  as potential attorneys' fees from its calculations. Nonetheless, although
2  Defendants have used conservative estimates, and Defendants' calculation does
3  not include all of Plaintiff's claims, or Plaintiff's request for attorneys' fees, it
4  comfortably exceeds the $5,000,000.00 threshold required by CAFA. *See* 28
5  U.S.C. § 1332(d). If Defendants included estimates for all of Plaintiff's causes
6  of action, the calculation would be even higher.

63. Although Defendants specifically deny Plaintiff's claims and deny Plaintiff is entitled to recover any of the relief she seeks, it is clear from the allegations in the Complaint and the scope of the relief sought that the amount in controversy exceeds the $5,000,000.00 jurisdictional threshold of 28 U.S.C. § 1332(d).

## CONCLUSION

64. Based on the foregoing, Defendants respectfully request that the Court remove the above-entitled action to federal court.

Dated: April 26, 2024        VORYS SATER SEYMOUR AND PEASE LLP

/s/*Cory D. Catignani*
Cory D. Catignani
Attorneys for Defendants
TAILORED SHARED SERVICES, LLC
THE MEN'S WEARHOUSE, LLC